A wife obtained an alimony judgment against her husband, payable in installments of $150 per month. One of such installments was not paid when due and she caused a rule to issue against him. The only evidence on the hearing was the testimony of the wife and that of the husband's father. The wife testified that her husband recently had $30,000 in cash, but that she was unable to say that he had it at the time of the hearing; and her testimony further authorized the inference that he was not physically unable to work. The father of the husband testified: "If my son has any money now to pay this alimony. I do not know about it. He is sick and not at all in his right frame of mind." The only issue at the hearing being the ability or inability of the husband to make the delinquent payment, upon which he was adjudged in contempt for his failure and refusal to pay it, the contention of the husband that the judgment is contrary to law because without evidence to support it, is without merit.
Judgment affirmed. All the Justices concur.
 No. 14831. MAY 3, 1944.
On suit for divorce and alimony by Mrs. Zula West against A. N. West Sr., a judgment for temporary alimony was granted. Since then, there have been five petitions for contempt of court for failure to comply with that judgment, heard by as many different judges, who in each instance cited the defendant to show cause why he should not be adjudged in contempt, and three times adjudged him *Page 567 
to be in contempt, with the privilege of purging himself by paying the alimony involved. It is to the last of such judgments that the plaintiff in error excepts. There was no written response, but evidence was heard. The sole assignment of error is that the judgment is contrary to law and contrary to the evidence, and that the plaintiff in error is not guilty of contempt under the evidence. The bill of exceptions states that the brief of evidence as approved by the court is attached thereto and made a part thereof; but it was not attached to or incorporated in the bill of exceptions. The parts of the record specified as material to a clear understanding of the errors complained of do not include the brief of the evidence. On motion of counsel for the plaintiff in error, who suggested a diminution of the record, the clerk of the superior court was ordered to certify and send to this court a proper transcript of the brief of evidence. The brief of evidence so sent to this court consists of the testimony of only two witnesses, namely, Mrs. Zula West, the plaintiff, and A. B. West, the father of the defendant, all of which is as follows:
Testimony of the plaintiff: "I am the wife of A. N. West. I am the plaintiff in this case for divorce and alimony against him. The court ordered Mr. West to pay me $150 per month as temporary alimony. I received $425 from him on the alimony just before Christmas. He has not paid the $150 due on the alimony on January 1, 1944. I had trouble with him about another woman I do not know whether he has any money at all at this time or not but ought to have it. He had more than $30,000 in cash last summer, but I can not say whether or not he has had any money since the 22nd day of December, 1943. I did take $10 over to Mrs. Ray's home some time last year and leave it because my husband would beat me to make me give money back to him. I never took any money he had in the vault in the closet in his room. The Federal officers searched in that room for tickets and other things, but I do not know what they found. Mr. Allen, Mr. West's lawyer, knew all about it, and told Mr. West to pay me $10 that day to live on. I helped to make the money he had and did as much to earn it as he did. I did not think Mr. West was very sick the day the search was made. No, I did not offer to wait on him when I was there that day. I did not take any money of his and spend it for jewelry or on trips to California. My youngest son worked *Page 568 
for Davison-Paxon Company for some time. But he is working for another company now. He uses the money he makes to buy clothes and things he needs. I used the $425 I got last December on the alimony to pay up my board. I bought the jewelry with my own money. I did not demand that he quit his work at Brunswick last January. He did it himself, and sold his equipment after he quit the job or contract. He had an automobile last year, but has it hid out now. I did not insist on Mr. West leaving the job at Brunswick. Mr. West did it himself of his own accord. I did not go with the Federal officers out to 1199 Holly Street. I did not know that they were going to be out there. I did not have any money at all, and Mr. Allen, Mr. West's lawyer, told Mr. West to pay me $10 that day. Jack and I went out there to get it. I used the $425 I got last December for back alimony to pay board and other bills that I had incurred. I had borrowed some money to live on and had to pay this back."
Testimony of A. B. West: "I am the father of A. N. West. I am a minister, and have been for a good many years. I have been the pastor of several different churches. I was present at the home of my son, A. N. West, last summer, in 1943, when three Federal officers came out to my son's home on Holly Street with a search warrant. These officers went through the house and searched for groceries and gas tickets, and Mrs. Zula West, my son's wife, assisted them in the search. They did not make any case against A. N. West. I saw Mrs. Zula West, my son's wife, go into the closet in his bedroom and put her hand into a little vault or place cut into the wall of the closet, and bring something out in her hands and put it into a collection of what seemed to be clothes and other articles that she had in sacks and a suit case. She turned her back to me as she did this, and left the home in a few minutes. I took her and the boy in the car to the intersection of Marietta and Spring streets, where she got out and went back the other way with the bundles. I had understood that she was going with me to East Point where she lived, and do not know why she got out at the place where she did. My son, A. N. West, has been pawning his clothes and some guns and other things lately to pay alimony to his wife. My wife and I have been staying with my son a good portion of the time since his wife left him. I consider my son's wife as one of the family and have done and want now to do anything *Page 569 
I can to keep them together. If my son has any money now to pay this alimony, I do not know about it. He is sick and not at all in his right frame of mind. I did not know about money being in that closet before that time. The officers were very nice during the search, and did not take anything from that closet except a small sack of what there was, silver money, and they put that back where they got it. My grandson had the key and unlocked the vault that his mother took something out of. My son is in very poor health. I did not see what Mrs. West got out of the closet. I know that my son first thought that the Federal officers got the money, but he does not think so now."
One paragraph of the defendant's answer to the original suit for divorce and alimony, verified under oath by him, reads as follows: "Answering paragraph six of the petition, the defendant shows that he, in reality, owns the property described in paragraph five thereof, and in addition to that, he has some cash on hand, but denies that he has as much as $20,000."